

FILED

April 4, 2018

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

9:11 A.M.

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **JEFF D. WALLIS,** | ) | **Docket No. 2017-08-0772** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 2656-2017** |
| **BAPTIST MEMORIAL HOSPITAL,** | ) | |
| **Self-Insured Employer.** | ) | **Judge Allen Phillips** |

## EXPEDITED HEARING ORDER GRANTING MEDICAL AND TEMPORARY DISABILITY BENEFITS

Mr. Wallis requested medical and temporary disability benefits for an injury to his back occurring on January 8, 2017. Baptist Memorial Hospital asserted the injury did not arise out of the employment and denied the claim. The Court heard the disputed issues on March 21, 2018, and holds Mr. Wallis is entitled to the requested benefits.

### History of Claim

Mr. Wallis worked for Baptist as a patient care assistant, a job that required lifting patients. He described the job as physically demanding. In addition to lifting patients, he walked up to twelve hours during his shifts. A 2003 automobile accident caused him to undergo a lumbar fusion surgery in 2008, but he completely recovered and returned to steady employment. He denied any problems with his back until January 8.

On that date, Mr. Wallis helped lift a 300-pound patient. The patient collapsed onto Mr. Wallis' arms when he "hooked" them under the patient to lift. He felt immediate pain in his back "like being stuck with an ice pick." He went to the hospital's emergency room, where the provider said Mr. Wallis had a lumbar strain and left-sided sciatica and characterized it as a "work related injury." When Mr. Wallis did not improve, Baptist offered him a panel of physicians, from which he chose Dr. James Varner, an orthopedic surgeon.

On January 13, Dr. Varner recorded the incident and noted a lumbar fusion at the L5-S1 level. X-rays showed a "well-consolidated lumbar fusion with retained

1

instrumentation." Dr. Varner diagnosed a lumbar strain with left sciatica and recommended an MRI. He asked the radiologist to compare the MRI to one performed in 2008.

The radiologist interpreted the January 17 MRI as showing an "interval posterior fusion at the level of L5 and S1" when comparing it to the 2008 MRI. Dr. Varner said his review of the MRI showed "a well-consolidated fusion with reduction of [Mr. Wallis'] spondylolisthesis at L5-S1." However, Mr. Wallis still complained of pain, so Dr. Varner recommended a surgical consultation. Baptist provided another panel, from which Mr. Wallis chose Dr. Laverne Lovell, a neurosurgeon.

Dr. Lovell said he could not determine if Mr. Wallis had a solid fusion based on either the January 17 MRI or Dr. Varner's x-rays. Thus, he recommended a CT scan. After his review of the CT, Dr. Lovell said, "I personally don't think he is fused across the disc space," but he added, "I frankly don't think the CT scan is good enough technically as an image to tell me that he is fused." He summarized his causation opinion as follows:

> It is an odd scenario and I understand that completely. The patient feels like he has to be fused since his surgery was done in 2008 and he supposedly had no symptoms until this work injury. I understand his feelings about that but a fibrous non-union, I think, will eventually become symptomatic for a patient as time goes by and it has just taken him a lot longer period of time. I don't deny that there was increased or occurrence of symptoms with this episode at work. I just think way more than 50% of his problem stems around a fibrous non-union from a surgery done eight years ago under his regular insurance.

Dr. Lovell recommended Mr. Wallis return to Dr. Francis Camillo, his surgeon in 2008, or alternatively Dr. Lovell could perform a repeat fusion "under . . . regular insurance." Mr. Wallis opted to see Dr. Camillo.

On June 5, Dr. Camillo reviewed the CT scan and said it showed a broken screw. He also saw the broken screw on his own x-rays but noted no other abnormalities. Dr. Camillo summarized his findings by stating:

> What I believe is he had a psuedoarthrosis.[1] I believe when he was holding the patient more than likely he fatigued the screw, and it broke, and now this is the increase in his pain in his back. . . . I do believe that this was due to his work injury.

---

[1] A pseudoarthrosis is a failure of a fusion following surgery. www.ncbi.nlm.nih.gov/pmc/articles (last visited April 2, 2018).

2

Dr. Lovell reviewed Dr. Camillo's office note and x-rays. He said he "went back" and looked at the CT scan and plain x-rays taken before Dr. Camillo's visit, and he still did not see a broken screw on those studies. He did say the earlier studies confirmed that Mr. Wallis did not have a solid fusion. However, Dr. Lovell also stated that he "would not consider in any way, shape or form a broken screw and non-union from a previous operation to be related in any kind of work incident." Instead, he said broken screws "can happen for no reason and for any reason and I will not relate that to a work injury." He then stated:

> It is not clear to me whether my previous studies just weren't in correct focus or alignment to show this screw fracture and Dr. Camillo's study happened to be in a proper alignment or if the patient actually broke the screw after seeing me and prior to seeing Dr. Camillo. The CT scan generally will be the best study and will show a screw fracture and the CT scan that I performed on the patient does not show that.

Dr. Lovell "went on record" as saying the broken screw happened between the time he saw Mr. Wallis and the time Dr. Camillo saw Mr. Wallis. Dr. Lovell confirmed his opinions in affidavit form.

Based on this proof, Baptist contended Mr. Wallis did not establish the required causal connection between the January 8 incident and his injury. It pointed to the absence of any diagnosis of a broken screw until after April 2017 and argued the Court must presume Dr. Lovell's opinions are correct. Mr. Wallis argued it is "ridiculous" to argue his problems came from anything other than the work incident because he had no problems until then. He relied upon Dr. Camillo's opinion.

## Findings of Fact and Conclusions of Law

### Standard applied

Mr. Wallis must come forward with sufficient evidence demonstrating he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017). Mr. Wallis elected to represent himself, as is his right, but the Court cannot "excuse him from complying with the same substantive and procedural rules that represented parties are expected to observe." *Walton v. Averitt Express, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 37, at *5 (June 2, 2017).

### Analysis

Mr. Wallis claims the January 8 incident caused his disablement and need for medical treatment. To prevail, he must establish a specific incident that arose primarily out of his employment by presenting medical evidence that the incident "contributed

more than fifty percent (50%)" to his claimed disablement or need for medical treatment. Tenn. Code Ann. § 50-6-102(14)(C)-(D). The Court finds he did so.

Looking to the above requirements, the Court first finds Mr. Wallis established a specific incident. He credibly detailed the mechanics of the January 8 event and its immediate effects. He was steady, forthcoming, and self-assured based on the Court's direct observation. *See Kelly v. Kelly*, 445 S.W.3d 685, 695-696 (Tenn. 2014). Further, the Court notes Mr. Wallis appeared to be in legitimate pain based on his physical demeanor.

Next, the Court finds Mr. Wallis established the work incident contributed more than fifty percent to his disablement and need for treatment. In so finding, the Court recognizes Dr. Lovell's opinion is presumed correct. Tenn. Code Ann. § 50-6-102 (14)(E). However, his opinion is subject to rebuttal by a preponderance of the evidence, and the Court finds Mr. Wallis would likely prevail in rebutting that opinion at a hearing on the merits.

On this point, the Court considers that Tennessee law has long held medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). The Court believes Mr. Wallis' uncontroverted testimony that he worked a physically demanding job until the January 8 incident disabled him. Baptist offered no evidence to substantiate that he injured his back between April and June 2017, as Dr. Lovell suggested.

Moreover, Mr. Wallis' testimony is consistent with Dr. Camillo's opinion that the screw most likely broke on January 8. When faced with conflicting medical testimony, the Court must use its discretion in accepting one expert opinion over another and, in so doing, may consider which opinion contains the more probable explanation. *Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). Here, the Court finds Dr. Camillo's opinion contains the more probable explanation.

Both Drs. Camillo and Lovell believed Mr. Wallis had an incomplete fusion from his surgery in 2008. However, unlike Dr. Lovell, Dr. Camillo thought the event of January 8 "fatigued" the screw, causing it to break and lead to Mr. Wallis' pain. Dr. Camillo detected a broken screw on both the CT scan and on x-rays taken in his office. He found no other abnormalities, in accord with Dr. Lovell, to account for Mr. Wallis' pain.

The Court contrasts Dr. Camillo's opinion with that of Dr. Lovell, who said, "[I]t is not clear" whether poor quality x-rays were to blame for not seeing a broken screw or whether the screw broke between April and June. He further assailed the April 7 CT scan

4

as not "good enough technically" to confirm a fusion, but he later labeled the same CT scan as "the best study" to show a fractured screw. He then used his interpretation of the CT scan to relegate the January 8 incident to mere happenstance, saying an implanted screw might break "for no reason [or] for any reason," but not because a 300-pound patient collapsed on Mr. Wallis. This opinion cannot account for the uncontroverted testimony of Mr. Wallis that he functioned without restriction until January 8.

For these reasons, the Court accredits Dr. Camillo's opinion and holds Mr. Wallis presented sufficient evidence that he is likely to prevail at a hearing on the merits regarding causation.

*Medical benefits*

Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) requires Baptist provide Mr. Wallis a panel of physicians to provide authorized treatment. It did so twice. Thus, the Court will not order another panel. However, Dr. Lovell recommended that Mr. Wallis return to Dr. Camillo. The Court holds it is appropriate to designate Dr. Camillo as the authorized physician under these circumstances.

*Temporary disability benefits*

Dr. Lovell did not totally restrict Mr. Wallis from work. Thus, Mr. Wallis is not entitled to temporary total disability. However, he might be entitled to temporary partial disability (TPD), which is payable when an employee might resume some gainful employment but has yet to reach maximum medical improvement. *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016). Here, Dr. Lovell maintained light-duty restrictions as of April 27, 2017. Mr. Wallis testified without rebuttal that Baptist ceased accommodating his restrictions after Dr. Lovell said it was not work-related. Thus, the Court finds he is entitled to TPD from then until now and ongoing, until a physician releases him to work or places him at maximum medical improvement.

**IT IS, THEREFORE, ORDERED** as follows:

1. Baptist shall provide Mr. Wallis with reasonable and necessary medical treatment of his lumbar spine injury under Tennessee Code Annotated section 50-6-204(a)(1)(A), including any proposed surgery. Mr. Wallis or Dr. Camillo shall provide the bills to Baptist.

2. Baptist shall pay TPD benefits to Mr. Wallis for the period of April 28, 2017, to April 4, 2018, a period of forty-eight weeks and five days, at a rate of $425.88 per week, or $20,744.61. Baptist shall continue TPD payments until a physician releases Mr. Wallis to full-duty or places him at maximum medical improvement.

5

3. This matter is set for a telephonic Status Hearing on **Tuesday, June 26, 2018,** at **10:00 a.m. Central Time**. The parties must call toll-free at 855-543-5038 to participate in the hearing. Failure to call in may result in a determination of the issues without a party's further participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED this the 4th day of April, 2018.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Collective Medical Records of Baptist Hospital and Drs. Varner and Lovell
2. Medical Records of Dr. Francis Camillo
3. X-rays purported to be Mr. Wallis' spine
4. Wage Statement

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Motion for Summary Judgment
5. Statement of Undisputed Material Facts in Support of Summary Judgment
6. Order Denying Motion for Summary Judgment
7. Employer's "Plain and Concise Statement As to Why Relief Should Not Be Granted"

6

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of April, 2018.

| Name | Via Email | Service sent to: |
|------|-----------|------------------|
| Jeff Wallis, Self-Represented Employee | X | 1jeffwallis.@att.net |
| Matthew Kirby, Attorney for Employer | X | mkirby@harrisshelton.com |
| Pablo Varela, Attorney for Employer | X | pvarela@harrisshelton.com |

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims